UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | Case No: 2:16-cv-0450-JRG |
| Plaintiff | LEAD CASE |
| v. | |
| CITIBANK, N.A.. | |
| Defendant. | |
| | |
| SYMBOLOGY INNOVATIONS, LLC, | Case No. 2:16-CV-00600-JRG |
| Plaintiff | CONSOLIDATED CASE |
| v. | |
| NETGEAR, INC. | |
| Defendant. | |

**NETGEAR INC.'S MOTION AND BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.    Procedural history ................................................................................... 2

    B.    NETGEAR And Its Relevant Documents and Witnesses Are Based In San Jose, California ....................................................................................... 3

    C.    At Least Two Potentially Relevant Third Party Witnesses Are Located in the Northern District of California and None Are Located in Texas ............ 5

    D.    Symbology's Purported Connection to the Eastern District of Texas Was Created for Litigation Purposes ............................................................... 6

III.  LEGAL ANALYSIS ............................................................................................ 7

    A.    Legal Standard ....................................................................................... 7

    B.    Transfer is Appropriate .......................................................................... 8

        1.    This Case Could Have Been Brought In the Northern District of California ...................................................................................... 8

        2.    The Private Interest Factors Support Transfer ........................... 9

            a.    Relative Ease of Access to Sources of Proof Supports Transfer .... 9

            b.    The Availability of Compulsory Process to Secure the Attendance of Witnesses ................................................. 11

            c.    The Cost of Attendance For Willing Witnesses ......................... 12

            d.    Other Practical Factors Are Neutral ................................................ 14

        3.    The Public Interest Factors Collectively Favor Transfer ......................... 14

            a.    Administrative Difficulties Flowing from Court Congestion ....... 14

            b.    Local Interest in Adjudicating Local Disputes ............................ 15

            c.    Remaining Public Interest Factors ................................................ 15

IV.   CONCLUSION .................................................................................................. 15

US_ACTIVE-128369924.4-AHILGARD

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACQIS LLC v. EMC Corp.*,
No. 6:13-CV-639, 2014 WL 5485900 (E.D. Tex. Sept. 10, 2014)..........................................12

*EON Corp. IP Holdings, LLC v. Apple Inc.*,
135 S. Ct. 1846, 191 L. Ed. 2d. 725 (2015) ..............................................................................8

*Fujitsu Ltd. v. Tellabs, Inc.*,
639 F. Supp. 2d 761 (E.D. Tex. 2009) ................................................................................9, 10

*GeoTag, Inc. v. Aromatique, Inc.*
No. 2:10-cv-570-MHS, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) ....................................2

*Hanby v. Shell Oil Co.*,
144 F. Supp. 2d 673 (E.D. Tex. 2001) ......................................................................................7

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ............................................................................................8

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)...................................................................................... *passim*

*In re Hoffman-La Roche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)........................................................................................12, 15

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)..................................................................................................1

*In re Morgan Stanley*,
417 F. App'x 947 (Fed. Cir. 2011) ............................................................................................8

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009)............................................................................................8, 13

*In re TS Tech United States Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)............................................................................................8, 13

*In re Verizon Bus. Network Serv. Inc.*,
635 F.3d 559 (Fed. Cir. 2011)..............................................................................................8, 14

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ................................................................................................7, 9

US_ACTIVE-128369924.4-AHILGARD

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................8, 9, 11, 14

*L.G. Elecs., Inc. v. Advance Creative Computer Corp.*,
    131 F.Supp.2d 804 (E.D. Va. 2001) ..........................................................8

*Mohamed v. Mazda Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000) .........................................................7

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*,
    614 F. Supp. 2d 772 (E.D. Tex. 2009) ........................................................9

*Winner lnt'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000), *cert. denied*, 530 U.S. 1238 (2000).......................7

**Statutes**

28 U.S.C. §§ 1391(c) & 1400(b)...................................................................8

28 U.S.C. § 1404(a) ................................................................... *passim*

US_ACTIVE-128369924.4-AHILGARD

## I.      INTRODUCTION

Plaintiff Symbology Innovations, LLC ("Symbology") chose to file this patent infringement lawsuit against NETGEAR, Inc. ("NETGEAR") in the Eastern District of Texas despite NETGEAR's headquarters in the Northern District of California, which is where NETGEAR's alleged direct infringement – internal use and testing of the accused products – takes place, and where NETGEAR also designs, markets and sells the accused products. Whereas the vast majority of key witnesses and documents that are relevant to this case are located in the Northern District of California, Symbology has only an attenuated connection to this district and few, if any, witnesses or relevant documents are located here.   For the convenience of the parties, NETGEAR hereby moves to transfer the case to the Northern District of California under 28 U.S.C. Section 1404(a) for at least the following reasons.

First, Symbology could have brought this case in the Northern District of California, where NETGEAR would be subject to jurisdiction.

Second, California is clearly the hub of the accused activity. The alleged direct infringement asserted against NETGEAR (internal use and testing) occurs in NETGEAR's San Jose, California headquarters, which is also home to the company's senior management and its marketing, engineering, product management, operational, sales and financial reporting departments.  The key witnesses and documentary and electronic data evidence concerning the Accused Products and activities are thus located in the Northern District of California.

Third, Plaintiff's connection to the Eastern District of Texas is "recent, ephemeral, and a construct for litigation," and entitled to little or no weight.  *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011). Symbology was created as a Texas corporation shortly before acquiring, and initiating litigation based upon, the patents-in-suit. Its registered agent, who is also the sole

named inventor of the patents-in-suit, resides in Florida.  The attorneys and law firms that prosecuted the patents-in-suit, as well as a prior art witness NETGEAR has identified and at least three third party witnesses with relevant knowledge of the Accused Products, are also located outside of Texas, with at least two located within the Northern District of California.

Fourth, no efficiencies would be gained at this early stage of litigation by maintaining this case in the Eastern District of Texas because, among other things, although Symbology has filed serial co-pending cases here, most have settled early and the Court has not substantively addressed the patents-in-suit in any opinion or Order.  Moreover, Symbology's choice to file serial cases here should not sway the transfer analysis in any event. *GeoTag, Inc. v. Aromatique, Inc.* No. 2:10-cv-570-MHS, 2013 WL 8349856, at * 5 (E.D. Tex. Jan. 14, 2013) (courts "will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.").

Finally, in a well-reasoned opinion, Magistrate Judge Love has already transferred other patent litigation against NETGEAR to the Northern District of California in light of, among other things, NETGEAR's California base and the convenience to its foreseeable employee witnesses – facts that are also present here.  *See Chrimar Systems, Inc. v. NETGEAR, Inc*., Civil Action No. 6:15-cv-00634 JRG-JDL, Dkt. 34 (1/15/16 Order) (transferring patent infringement case to the Northern District of California under Section 1404(a)), Appendix 1, hereto.  Here, as in *Chrimar*, the convenience of the parties and witnesses and the interests of justice all favor transfer to the Northern District of California under 28 U.S.C. §  1404(a).

## II.    FACTUAL BACKGROUND

### A.    Procedural history

Symbology filed this lawsuit on June 7, 2016, alleging that NETGEAR infringes three

patents, United States Patents No. 8,424,752, No. 8,651,369, and No. 8,936,190 (collectively "Asserted Patents").  (Dkt. 1.)  Plaintiff's Complaint alleges that NETGEAR is infringing the Asserted Patents by "by using and/or incorporating Quick Response Codes (QR codes) in product advertising and/or packaging," including "through internal testing", "use of QR codes on product advertising, including a website, for [the] Netgear Genie App" and "in connection with its product literature" (hereafter "Accused Products").  (Dkt. 1 at ¶¶ 13-15, 27-29, 41-43.) Plaintiff's Infringement Contentions assert just three patent claims – all method claims – and specifically accuse NETGEAR of direct infringement based on its "internal use and testing" of the NETGEAR Genie App.  (Declaration of John P. Bovich ("Bovich Dec.") Exh. A.)

Since February 2015, Symbology has filed more than 45 actions in the Eastern District of Texas based upon the same Asserted Patents.  (Bovich Dec. ¶3, Exh. B.)  All but two (of at least 32 total) lawsuits that Symbology filed here in 2015 have been dismissed and/or closed.  (*Id.*) This lawsuit is currently consolidated – for all purposes except venue determinations and trial – with 15 other lawsuits that Symbology filed in subsequent waves on April 26, 2016 and June 7, 2016 against multiple companies, including Bank of American Corporation, Pioneer Electronics and LifeLock, Inc.  (*See* Dkts. 4, 5. 52.)  Highlighting the lack of any real need to litigate in this venue for the convenience of the Plaintiff or the parties, Symbology recently chose to file, on July 20, 2016, at least five additional cases concerning the same Asserted Patents in a different venue – the Southern District of Florida.  (Bovich Dec. ¶3, 4, Exh. C.)

B.     **NETGEAR And Its Relevant Documents and Witnesses Are Based In San Jose, California**

NETGEAR is a worldwide provider of innovative, branded networking solutions. (Declaration of Jennifer Khouri ("Khouri Dec." ¶2.) NETGEAR's headquarters and its principal place of business are located at 350 East Plumeria Drive, San Jose, California 95134.  (*Id.*)

US_ACTIVE-128369924.4-AHILGARD

NETGEAR's senior management, about 70 percent of its employees, and most of its documents, are based at the company's headquarters in San Jose, California. (*Id.* at ¶3.)

The accused "internal use and testing" of the NETGEAR Genie App takes place at NETGEAR's headquarters, and NETGEAR does not conduct any accused use or testing in Texas. The NETGEAR departments with primary responsibility for the Accused Products, including operations, marketing, product management, engineering, sales and accounting are all located in and managed from the Northern District of California. (*Id.* at ¶4). Similarly, NETGEAR's employees with information concerning the accused NETGEAR products – including their testing, design, development, operation, advertising, packaging, testing, website design and functionality, and product literature – are all based at NETGEAR's San Jose, California headquarters. (*Id.* ¶¶6-15). A company in China, DragonFlow, writes the software related to QR codes, and the business relationship between NETGEAR and DragonFlow is managed from the San Jose office. (*Id.* ¶7). As set forth in the Khouri Declaration, NETGEAR's likely corporate representatives and employees with information material to at least issues of non-infringement and alleged damages are located in the Northern District of California. (*Id.* at ¶¶ 6-15.)

Likewise, any NETGEAR hard copy documents related to the Accused Products, such as marketing, advertising, packaging, testing, product literature and exemplary products and materials, are located in San Jose, California. (*Id.* at ¶19.) In addition, NETGEAR's electronic data, which is largely located on employee laptops and desktop computers in San Jose, and servers located in San Jose, California and Mesa, Arizona, would be collected, for purposes of this case, by members of the IT department located in San Jose. (*Id.* at ¶20.) NETGEAR's San Jose-based employees, including NETGEAR's IT department, also access during the regular

US_ACTIVE-128369924.4-AHILGARD

course of their business electronic data that may be relevant to this lawsuit which is stored on third party cloud-based servers. (*Id.*)

NETGEAR does not have an office in Texas and does not otherwise maintain any facility here. (*Id.* at ¶21.) NETGEAR also has no IT department employees in Texas (or Arizona). (*Id.*) Three NETGEAR employees work out of their homes in Texas, but these employees have no unique information concerning the accused products, and the more senior NETGEAR employees based in San Jose, California are more likely to be called to testify as witnesses or corporate representatives in this matter. (*Id.*)

### C. At Least Two Potentially Relevant Third Party Witnesses Are Located in the Northern District of California and None Are Located in Texas

None of the third parties that may have information relevant to this lawsuit are based in Texas. The sole inventor and registered agent for Symbology, Leigh Rothschild, is based, and conducts activities, in Florida. (Bovich Dec. Exhs. D-I.)1  The prosecuting attorney, Atanus Das, is based in Chicago (*id*. Exh. K), and the law firms identified on the face of the Asserted Patents are either dissolved (DaVinci Intellectual Property LLC) or currently based in California, not Texas (Techlaw LLP). (Dkt. 1, Exhs. A-C; Bovich Dec. Exhs. L, M.)

NETGEAR has also identified at least U.S. Patent No. 6,993,573 (the '573 patent) which is highly relevant in this case because it anticipates the asserted claims. (Bovich Dec. Exhs. N, O.) The '573 patent lists as the inventor Kevin D. Hunter in Fort Myers, Texas, and records indicate that he remains in Fort Myers and/or is in New York – not Texas. (*Id*. Exhs. N, P, Q.)

Similarly, according to corporate and state records, the past assignees of the Asserted

---

1 Mr. Rothschild is affiliated with and/or manages multiple companies in Florida, including one formed as recently as recently as June 2016:  Ariel Inventions, LLC, (*id*. Exh. F), Inventaur Management (June 2016 formation), (*id.* Exh. G); Rothschild Mobile Imaging Innovations (*id.* Exh. H); Rothschild Trust Holdings (*id.* Exh. I), Reagan Innovations, LLC (*id*. Exh. J.)

US_ACTIVE-128369924.4-AHILGARD

Patents are located in Florida – not Texas.  Specifically, before the patents were assigned to Symbology, their owners included Mr. Rothschild (the sole named inventor), Ariel Inventions, LLC ("Ariel"), to whom Mr. Rothschild assigned the patents in 2013 and 2014, and Reagan Inventions, LLC ("Reagan"), to whom the '752 patent was assigned in 2012. (*Id*. Exhs. R-U.) Mr. Rothschild, Ariel and Reagan are all located in Florida, and Mr. Rothschild is the registered agent and/or manager of all prior assignees.  (*Id*. Exhs. F, J.)[2]

While none of the potential third party witnesses are located within the Eastern District of Texas (or Texas at all), there are at least two potential third party witness located in the Northern District of California. NETGEAR's former Vice President of Home/Consumer Products, Vivek Pathela, worked at NETGEAR for over ten years until 2011, during which time he conceived of the overall concept for NETGEAR's Genie App (and also came up with its name.)  Mr. Pathela would have relevant unique information concerning the conception of the Genie App, and also relevant information concerning its functionality and design.  Mr. Pathela remains in the Bay Area at a company called "Omny IQ" located in Saratoga, California, within the Northern District of California.  (Khouri Dec. ¶16; Bovich Dec. Exs. EE, FF.)  In addition, a former Senior Product Manager at NETGEAR, Alice Tsang, has relevant and unique information concerning the design, development and operation of the Genie App.  Tsang remains in the Bay Area, currently working as a Software Engineer at Promise Technology, Inc. in Milpitas, California within the Northern District of California.  (Khouri Dec. ¶18; Bovich Dec. Exs. GG, HH.)

### D.	Symbology's Purported Connection to the Eastern District of Texas Was Created for Litigation Purposes

Symbology incorporated in Texas in December 2014, just before being assigned the

---

[2] One of NETGEAR's former employees, Nan Wang, who was involved in Beijing-based test enginnering related to the Genie App, remains in Beijing. (Khouri Dec. ¶17.)

US_ACTIVE-128369924.4-AHILGARD

patents in suit and filing its first wave of lawsuits based on the Asserted Patents.  (Bovich Dec. Exhs. B, D, U.) Symbology's registered agent is the named inventor who is based in Florida. (*See* Dkt. 1, Exhs. A-C; Bovich Dec. Exhs. D-J.)  In its initial diclosures, Symbology identifies only the Florida-based named inventor (who is also its agent) and prosecuting attorney (Atanus Das in Chicago) as potential individual witnesses with relevant knowledge concerning this case. (Bovich Dec. Ex. II.)  And to the extent any Symbology documents relevant to the asserted patents are even located in Texas, they would have been recently transferred from Florida for purposes of litigation, and could be easily moved again for litigation in California.

## III.   LEGAL ANALYSIS

### A.   Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In a patent infringement action, motions to transfer pursuant to Section 1404(a) are governed by the law of the regional circuit in which the district court sits. *Winner lnt'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000), *cert. denied*, 530 U.S. 1238 (2000) (citations omitted).  The decision whether to transfer a civil action is based on the particular circumstances of the case and is committed to the sound discretion of the trial court. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Where the private and public interest factors show that another venue is "clearly more convenient," courts not only may, but should transfer

US_ACTIVE-128369924.4-AHILGARD

the case.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (issuing writ of mandamus ordering transfer of action from the Eastern District of Texas to the Southern District of Ohio).  Thus, for example, when a substantial number of witnesses live in the transferee forum, while few live in the plaintiff's chosen forum, transfer should be ordered.  *See In re Genentech*, 566 F.3d 1338, 1342-45 (Fed. Cir. 2009); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Notably, Plaintiff's venue choice is not a distinct factor to be considered in the analysis: "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech,* 551 F.3d at 1320.  Moreover, a showing that the transferee forum is clearly more convenient cannot be overcome by alleged judicial efficiency based on other suits pending in an inconvenient district.  *In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (transfer to a clearly more convenient forum cannot be overcome based on court's prior experience with patent); *In re Morgan Stanley*, 417 F. App'x 947, 949-50 (Fed. Cir. 2011) (transfer appropriate despite the transferor forum's experience with one of many asserted patents); *In re Apple, Inc.*, 581 F. App'x 886, 889-90 (Fed. Cir. 2014) (prior experience with patent family cannot overcome other factors favoring transfer), cert. denied sub nom. *EON Corp. IP Holdings, LLC v. Apple Inc.,* 135 S. Ct. 1846, 191 L. Ed. 2d. 725 (2015).

### B.     Transfer is Appropriate

#### 1.     This Case Could Have Been Brought In the Northern District of California

Transfer may be appropriate only to a forum where the cause of action could have been brought.  28 U.S.C. §§ 1391(c) & 1400(b); *LG Elecs.,* 131 F. Supp. 2d at 809.  Here, there is no dispute this action could have been brought in the Northern District of California because

US_ACTIVE-128369924.4-AHILGARD

NETGEAR has its principle place of business, and thus is obviously subject to personal jurisdiction and venue, there.  (Khouri Dec. ¶2.)

## 2.     The Private Interest Factors Support Transfer

After determining that a case could have been brought in the transferee forum, a district court then considers the private interest factors. *Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 776 (E.D. Tex. 2009).  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *Volkswagen II*, 545 F.3d at 315.  These factors establish that transfer is appropriate in this case.

### a.     Relative Ease of Access to Sources of Proof Supports Transfer

The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech*, 566 F.3d at 1345. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (internal quotation marks omitted). Indeed, "almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009).

Here, the relevant witnesses and key documentary evidence are located in the Northern District of California. As set forth above, NETGEAR's documents and data related to non-infringement and damages, including materials concerning the development, design, marketing, advertising, testing, sales and financial reporting for the Accused Products, are located at

NETGEAR's headquarters in San Jose, California. (Khouri Dec. ¶¶ 5, 19, 20.)  Any electronic

data that may be relevant is stored on employee computers and serves in San Jose, on servers in

Mesa, Arizona, or on third party servers of cloud-based storage providers.  (*Id*. ¶20.)  For those

materials stored on servers in Arizona or in the cloud, they will be accessed by NETGEAR's IT

and/or other employees based in the Northern District of California offices.  (*Id*.)

Similarly, as set forth in the Declaration of Jennifer Khouri (and in NETGEAR's Rule 26

Initial Disclosures (Bovich Dec. Exh. JJ)), key witnesses, including those that are likely to be

NETGEAR's corporate representatives, with information material to NETGEAR's defenses and

the Accused Products, including the Genie App, are all located in San Jose, California, including:

- Ye Zhang, a Sr. Director of Storage Software Engineering at NETGEAR, who was primarily responsible for the design of the accused Genie App, and also has relevant information concerning the design, development, functionality and accused "internal use and testing" of the Accused Products, including the NETGEAR Genie App. (Khouri Dec. ¶7, 8.)

- Jennifer Khouri, a Vice President of Customer Experience and Support at NETGEAR, who has relevant information concerning the accused internal use and testing of the Genie App, as well as relevant information concerning customer experience and support of the Accused Products, including the Genie App.  (*Id*. ¶9.)

- William Shum, a Senior Staff SQA Engineer in Research & Development, and Bo Xu, a Senior Software QA Engineer in Research and Development, who also have knowledge of the internal use and testing of the Accused Products, including the Genie App.  (*Id*. ¶9.)

- Sandeep Harpalani, a Senior Director in Product Management at NETGEAR, who has relevant knowledge of the product development, management, marketing and advertising of the Accused Products, including the Genie App.  (*Id*. ¶10.)

- Phil Pyo, a Senior Director in NETGEAR's Product Marketing department, who has relevant knowledge concerning marketing and advertising of the Accused Products, including the product literature and websites related to the Genie App.  (*Id*. ¶11.)

- Gordon Mattingly, a Vice President of Financial Planning and Analysis at

US_ACTIVE-128369924.4-AHILGARD

NETGEAR, who has relevant knowledge regarding sales, accounting, and financial information associated with the Accused Products, including the NETGEAR Genie App.  (*Id*. ¶12.)

- Terri Rasay, a Senior Marketing Manager at NETGEAR who has relevant knowledge of the marketing and sales of the Accused Products, including product literature and website information related to the Accused Products, including the NETGEAR Genie App.  (*Id*. ¶13.)

- Jonathan Hallatt is a Vice President of Sales, Americas at NEGEAR, who has relevant knowledge of the sales and distribution of the Accused Products in North America, including sales and distribution of the Genie App.  (*Id*. ¶14.)

By contrast, there are no key NETGEAR witnesses or documents in Texas.  (*Id*. ¶ 19-21.) Moreover, even Symbology's sources of proof are no more accessible in the Eastern District of Texas than in the Northern District of California.  According to his LinkedIn profile and other records, Mr. Rothschild—the named inventor of the Asserted Patents and the registered agent of Symbology and prior assignees of the Asserted Patents (Ariel and Reagan Innovations) —lives and conducts activities in South Florida. (Bovich Dec. Exhs. E-J.)  To the extent Mr. Rothschild or the prior assignees have relevant sources of proof, this evidence, therefore, is likely as easily accessible in California as it is in Texas.  Further, the patent lawyer and law firms that prosecuted the patents are all located outside Chicago, and at least one such law firm, TechLaw LLP, is based in California.  (*Id*. Exhs. K-M.)  In short, whereas the bulk of the sources of proof are in the Northern District of California, there appears to few, if any, relevant documents, electronic data, or witnesses in this District, and transfer should be granted.

### b.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor concerns the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses. *See In re Volkswagen II*,

US_ACTIVE-128369924.4-AHILGARD

545 F.3d at 316. The Court evaluates whether the Eastern District of Texas or the Northern District of California has subpoena power over non-party witnesses.  *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).

Here, NETGEAR has not identified any material non-party witness that this Court could compel to attend trial.  Conversely, at least two third parties, who are likely to have relevant and material information, are within the subpoena power of the Northern District of California.  Specifically, the person who conceived of (and came up with the name for) the NETGEAR Genie App, Vivek Pathela, is a former NETGEAR Vice President of Home/Consumer Products, with relevant information unique information concerning the conception of the Genie App.  He worked at NETGEAR for over ten years until 2011 and currently remains working within the Northern District of California.  (Khouri Dec. ¶16; Bovich Dec. Exs. EE, FF.)  Similarly, former NETGEAR Senior Product Manager, Alice Tsang, has unique and relevant information concerning the design, development and operation of the Genie App.  Ms. Tsang has remained in the Bay Area and currently works within the Northern District of California.  (Khouri Dec. ¶ 18; Bovich Dec. Exs. GG, HH.)

### c.      The Cost of Attendance For Willing Witnesses

The "single most important factor in the transfer analysis" is the convenience and cost of witness attendance. *Genentech*, 566 F.3d at 1343.  The question is not whether "all of the witnesses", but whether "substantial number" of them are located in the transferee forum. *Id.* at 1345; *see also ACQIS LLC v. EMC Corp.*, No. 6:13-CV-639, 2014 WL 5485900, at *3 (E.D. Tex. Sept. 10, 2014). "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of

US_ACTIVE-128369924.4-AHILGARD

inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

Here, NETGEAR has identified nine employees located in the Northern District of California as willing witnesses with relevant knowledge of the Accused Products, including the Genie App. Conversely, apparently not a single party witness lives in this District. *See Nintendo*, 589 F.3d at 1198. The Northern District of California is obviously more convenient for NETGEAR's witnesses because, to attend trial, no overnight travel would be required. While waiting to testify in court, these witnesses also could still go into the office. In contrast, a trial in Texas would require these NETGEAR employees to fly and stay overnight over 1,700 miles from home and work for an indefinite period of time. (Bovich Dec. Exh. V.)

Finally, with respect to any willing witnesses traveling from the Florida-area, the travel burden is about equal between this District and the Northern District of California. Although this District may be closer as the crow flies, the convenience analysis also should take into account that "the existence or non-existence of direct flights can impact the analysis of travel time." *See Order in IPVX Patent Holdings* at 5 (*citing In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). Whereas from south Florida (Miami), there are direct to the Northern District of California, there are none to the airport closest to Marshall, Texas – Shreveport, Louisiana. Thus, the travel burden to litigate here includes the time required for connecting flights, plus time to rent a car and drive from Shreveport to Marshall, for a total of well over 5 hours of travel time.[3] (Bovich Dec. Exh. W, X.) On the other hand, travel time from Miami to the Northern District of California (San Francisco International Airport) on one of many offered direct flights

---

[3] Alternatively, flights from Miami direct to Dallas take just over 3 hours, and the drive time from Dallas to Marshal is about 3 hours, resulting in travel time of a little more than 6 hours. (*Id*. Exs. Y, Z.)

is just a little over 6 hours.  (*Id*. Exh. BB.)[4]  In sum, this factor heavily favors transfer.

### d.      Other Practical Factors Are Neutral

The final private interest considerations are the practical problems related to the ease, expense, and expediency of trial. This factor is neutral. Notably, Symbology's choice to file numerous suits in this District concerning the same asserted patents cannot overcome an otherwise strong argument for transfer. *In re Verizon,* 635 F.3d at 562.  Moreover, the Court has not yet performed any substantive analysis with respect to the patents or technology at issue. (Bovich Dec. Ex. DD).

### 3.      The Public Interest Factors Collectively Favor Transfer

After considering the private interest factors, the Court considers the public interest factors, which are:  (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen*, 545 F.3d at 315.

### a.      Administrative Difficulties Flowing from Court Congestion

The speed with which a case may advance to trial is relevant under the Section 1404(a) analysis, but this factor alone cannot outweigh the other factors. *Genentech*, 566 F.3d at 1347. According to the Federal Judicial Caseload Statistics, the median time to resolve a case is very similar as between the Northern District of California and the Eastern District of California: 7.9 months, and 8.3 months, respectively.  (Bovich Dec. Ex. CC.)  The median time to trial in civil

---

[4] Alternatively, flights from Miami to San Jose International Airport require a stop and take a little over 7.5 hours.  (*Id*. Ex. AA.)

US_ACTIVE-128369924.4-AHILGARD

cases is slightly shorter here (22.1 months) as compared with the Northern District of California (30 months).  (*Id*.)  Overall, this factor is neutral.

### b.      Local Interest in Adjudicating Local Disputes

This factor considers the connection that the case has with both the transferee and transferor venues.  *In re Genentech*, 566 F.3d at 1347.  This factor favors transfer where, as here, local interest in the case is strong in the transferee district because the case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."  *See Hoffman-La Roche*, 587 F.3d at 1336; *Chrimar Systems, Inc. v. NETGEAR, Inc.,* Civil Action No. 6:15-cv-00634 JRG-JDL, Dkt. 34 (1/15/16 Order) at 13, Appendix 1 hereto.

Here, NETGEAR is headquartered in the Northern District of California and employs individuals there who will likely be witnesses in the case, and whose work directly relates to the Accused Products, including the Genie App. (Khouri Dec. ¶¶6-18.)  Conversely, there is little or no substantive connection to this district.  Thus, this factor weighs in favor of transfer.

### c.      Remaining Public Interest Factors

Both courts are familiar with and will apply federal patent law, there are no conflicts to avoid, and thus the remaining public interest factors are neutral.

## IV.     CONCLUSION

For the reasons set forth above, NETGEAR respectfully requests that the Court transfer this case to the Northern District of California.

October 3, 2016                            Respectfully submitted,


    /s/              *John P. Bovich*

- 15 -

John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)

**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:  +1 415 543 8700
Facsimile:  +1 415 391 8269
Email:  jbovich@reedsmith.com
Email:  jmitchell@reedsmith.com

Michael J. Forbes
Texas Bar Number: 24074217
mforbes@reedsmith.com
REED SMITH LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3864
Facsimile: (713) 469-3899

Counsel for Defendant NETGEAR, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM-ECF System per Local Rule CV-5(a)(3) on this 3rd day of October 2016.

*/s/  John P. Bovich*
John Bovich

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on October 3, 2016 via telephone with the following participants: for Plaintiff Symbology, Jay Johnson; for Defendant NETGEAR, John

US_ACTIVE-128369924.4-AHILGARD

Bovich. On October 3, 2016, Jay Johnson stated that Symbology opposes this motion.

*/s/  John P. Bovich*
John Bovich

# APPENDIX 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CHRIMAR SYSTEMS, INC., and CHRIMAR HOLDINGS COMPANY, LLC | § § § § | |
| *Plaintiffs,* | § § | |
| | § § | **CIVIL ACTION NO. 6:15-CV-634 JRG-JDL** |
| V. | § § | **JURY TRIAL DEMANDED** |
| NETGEAR, INC. | § § | |
| *Defendant.* | § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Netgear Inc.'s ("Netgear") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 22.)  Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 27) to which Netgear filed a reply (Doc. No. 30).  After considering the parties' arguments, the Court **GRANTS** Netgear's Motion to Transfer Venue (Doc. No. 22).

## BACKGROUND

Chrimar Systems Inc. is a Michigan corporation, with a principal place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335.  (Doc. No. 13, at ¶ 1.) Chrimar Holding Company, LLC is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604.  *Id.* at ¶ 2. Chrimar Systems, Inc. is the owner of the patents-in-suit and licensed those patents to Chrimar

1

Holding Company, LLC. (Doc. No. 27-1, Declaration of John F. Austermann, III, at ¶¶ 5, 6) ("Austermann Decl.").) Chrimar Holding Company, LLC maintains a single office in Longview, Texas, where it employs one full-time employee, Amanda Barnes. *Id.* at ¶ 7. Ms. Barnes's duties include supporting Chrimar's licensing efforts by conducting product research, product testing, and marketing support. *Id.* Chrimar's documents related to the patents-in-suit and electronic documents relating to its Etherlock® products are located either at Chrimar's Longview office or on servers in Dallas, Texas. *Id.* at ¶ 8.

Netgear is a Delaware Corporation with a principal place of business at 350 East Plumeria Drive, San Jose, California, 95134-1911. (Doc. No. 22-1, Declaration of Peter Newton, at ¶ 4) ("Newton Decl.").) Netgear has approximately 287 employees in its San Jose headquarters, which accounts for 70% of its U.S.-based employees. *Id.* at ¶ 5. Netgear specifically identifies five employees who have knowledge regarding the accused products and work at Netgear's San Jose headquarters. *Id.* at ¶ 7. Netgear identifies that its documents are stored electronically in San Jose, as well as on servers in Mesa, Arizona, and through third-party cloud-based systems located at Netgear's San Jose headquarters. *Id.* at ¶ 8. Netgear specifically identifies four employees who are located in San Jose who would have relevant information regarding the location of the documents and the ability to retrieve and recover such documents from the server if necessary. *Id.* at ¶ 9. Netgear's hard copy documents related to the accused products, such as technical, packaging and marketing documents are located in the Northern District of California. *Id.* at ¶ 10. Netgear has three Texas-based employees, two salespersons and one product line specialist who works on products not accused in this action. *Id.* at ¶ 12.

2

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case.  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).  The party seeking transfer must show good cause for the transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient.  *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice.  The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

3

("*Volkswagen I*").  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law.  *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203.  In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  In this case, Chrimar does not contest that Netgear conducts business within the Northern District of California and transfer is permissible under § 1404.

## I.      The Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof.  The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer.  *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009).  As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).  To meet its burden, Netgear must identify its sources of proof with some specificity such that the Court may determine

whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Netgear maintains that employees with relevant knowledge regarding the accused products are located in the Northern District of California.  (Newton Decl. at ¶¶ 7-9.)  Netgear specifically identifies the following five employees with relevant information located in San Jose, California:

- Peter Newton, Senior Director Product Line Manager, Commercial Business Unit in the Marketing department, knowledge regarding how NETGEAR markets the accused products and the development and design of the accused products;

- Bradley Verona, Senior Product Line Manager, Volume Switches, Commercial Business Unit, Product Marketing in the Marketing department, knowledge regarding the lifecycles of the accused products;

- Karine Tripier, Senior Program Manager, R&D – Business Products & Solutions, knowledge regarding the development process for NETGEAR's business products, including the accused products;

- Phoebe Tsai, Director, Strategic Purchasing in the Operations department, knowledge regarding the purchasing of Power over Ethernet chips and other components for the accused products, and knowledge of which Power over Ethernet chip vendors and original design manufacturers were used by NETGEAR in the development and manufacturing of the accused products; and

- Gordon Mattingly, VP of Financial Planning and Analysis in the Finance and Sales department, knowledge regarding the sales and financing of the accused products.

*Id.* at ¶ 7.

As to its documents, Netgear contends that the hard copy documents related to the accused products and its electronic data and documents are stored in the Northern District of California. *Id.* at ¶ 10. Netgear also maintains that employees of third-parties store relevant documents on cloud-based systems in San Jose, California, and that some electronic documents are on servers located in Mesa, Arizona. *Id.* at ¶ 8.

Chrimar identifies one employee in its Longview, Texas office—Amanda Barnes—who is responsible for supporting Chrimar's licensing efforts, conducting product research, testing products, and marketing. (Austermann Decl. at ¶ 7.) Chrimar contends that hardcopy documents relating to the asserted patents and electronic documents relating to its Etherlock® products, which implement the patented technology, including marketing material for those products, are located in its Longview office and on servers in Dallas, Texas. *Id.* at ¶ 8.  Chrimar also states that its EtherLock® products, which implement the patented technology, are physically located in the Eastern District of Texas. (Doc. No. 27, at 9.)  Chrimar maintains it intends to present and demonstrate these products at trial and will make them available for inspection in this District. *Id.* Chrimar also maintains generally that Texas Instruments ("TI") will have substantial amounts of relevant documents. *Id.*

Here, Netgear has specifically identified the location of its sources of proof in the Northern District of California, including specific employees with relevant knowledge and specific documents related to the accused products. Chrimar has identified only one employee with relevant knowledge and one product located in this District, along with several relevant documents located in this District.  Chrimar also generally identifies TI as having relevant

6

documents, but does not specify the relevance of those documents to this litigation.  In weighing this factor, the Court must acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Chrimar calls into question Netgear's servers located in Arizona, and also claims email servers are based elsewhere. (Doc. No. 27, at 7.) Chrimar also faults Netgear for not identifying the total volume of documents it has in the Northern District of California, but neither party has identified for the Court the total volume of relevant documents.   Again, the Court must acknowledge in this instance that the bulk of documents will come from the accused infringer; particularly, where, as here, the accused infringer has identified specific documents located at its headquarters.   The Court does not discount Chrimar's relevant documents in this District.   However, on balance, considering the number of witnesses identified in each district, as well as the specific categories of documents identified, the Court finds this factor weighs in favor of transfer.

(b)<em>The Availability of the Compulsory Process to Secure the Attendance of Witnesses</em>

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316.   The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum.  *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West*

7

*Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Netgear identifies one third-party, Geoffrey Thompson, who was the IEEE 802.3 Working Group Chairperson and who is located in the Northern District of California. (Doc. No. 22, at 12-13.) Chrimar contends that Mr. Thompson has served as an expert witness by defendants in other cases filed by Chrimar and that his weight should be discounted because Netgear could retain him as an expert. (Doc. No. 27, at 11.)  However, given that Netgear has identified Mr. Thompson as a third-party potential witness and does not indicate any intention to retain him as an expert, the Court accepts that Netgear has identified a third-party potential witness located in the Northern District of California.

Chrimar specifically identifies two third-party witnesses who are claimed to have relevant knowledge. (Doc. No. 27, at 12–13.)  Chrimar first identifies Martin Patoka of Texas Instruments ("TI") who Chrimar maintains has knowledge regarding the IEEE 802.3at Task Force's knowledge of Chrimar's patents and the decision to adopt the standard without considering these rights. *Id.* at 12. Chrimar contends that Mr. Patoka is still employed by TI, which is located within 100 miles of this Court, and therefore that he is subject to the full subpoena power of this Court.  *Id.* Chrimar also identifies Marc Sousa, a former Firmware Design Manager at TI who has knowledge of the design of PoE controllers. *Id.* at 13.  Chrimar contends Mr. Sousa is subject to the full subpoena power of this Court as he is located in McKinney, Texas. *Id.* Chrimar maintains that these witnesses are of particular importance

8

because Netgear alleges the actions of the IEEE are relevant and at least some of Netgear's accused products use TI PoE controllers such as the TI TPS2375. *Id.* at 12–13.

Weighing the one third-party witness specifically identified in the Northern District of California, against the two specifically identified third-party witnesses in Texas, the Court finds this factor is neutral.

### (c) The Cost of Attendance for Willing Witnesses

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, Netgear has specifically identified five employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of California. (Newton Decl. at ¶ 7.) Netgear has also identified Mr. Thompson who is located in the Northern District of California. (Doc. No. 22, at 12–13.) Netgear maintains that having trial in this District would significantly increase the inconvenience and expense for these witnesses.

Chrimar identifies Ms. Barnes who is a full-time employee located in Longview, Texas who will testify about the marketing of Chrimar's patented EtherLock® products. (Doc. No. 27, at 10.) Chrimar also identifies the inventors of the patents-in-suit, John Austermann and

9

Marshall Cummings, who are located in the Detroit area and therefore are closer to this District than the Northern District of California. *Id.* at 11. Chrimar maintains a trial in this District would be more convenient and less expensive for these witnesses. As discussed above, Chrimar has also specifically identified two third-party witnesses who are located in or near this District. (Doc. No. 27, at 12–13.)

In sum, Netgear has identified five willing witnesses in the Northern District of California, and Chrimar has named one willing witnesses in this District. In addition, there are two third-party witnesses identified for whom this District would be more convenient, and one for whom the Northern District of California would be more convenient. The convenience of the named inventors, being located in Michigan, is neutral. Thus, on balance, the Court finds this factor weighs in favor of transfer.

### (d) Other Practical Problems

#### (i) Judicial Economy

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Chrimar contends that judicial efficiency weighs against transfer because of this Court's familiarity with the patents-in-suit. (Doc. No. 27, at 5.) There are five cases filed in this District in 2013 that allege infringement of one of the patents-in-suit, U.S. Patent No. 8,155,012 ("the '012 Patent"): 6:13-cv-879, -880, -881, -882, -883 (hereinafter "*Chrimar I*" cases). There are also two cases filed in this District in 2015 that involve all four of the patents-in-suit: 6:15-cv-163, -164 (hereinafter "*Chrimar II*" cases). As discussed, the *Chrimar I* cases all

10

involved one of the asserted patents in the instant action.  The undersigned presided over all five of those cases and issued a claim construction opinion construing disputed terms of the '012 Patent.  All five cases settled prior to the filing of the instant action.  One of the *Chrimar II* cases, 6:15-cv-163, involves all four of the asserted patents-in-suit, and the other, 6:15-cv-164, involves two of the patents-in-suit.  Both of these cases are assigned to the undersigned.  At the time the instant action was filed, the *Chrimar II* cases had been consolidated and were ready for a scheduling conference.  In addition, on the same day the instant action was filed, twenty-five additional cases were filed in this District alleging infringement of the same patents, and five recently-filed additional cases involving two of the asserted patents were also pending in this District.

Netgear maintains that the Northern District of California will have some experience from handling one currently pending case, 4:13-cv-1300, involving a related patent, U.S. Patent No. 7,457,250 ("the '250 Patent"). (Doc. No. 22, at 13–14.)  Prior to the initiation of this action, Judge White issued a claim construction opinion construing the disputed terms of the '250 Patent. (4:13-cv-1300, Doc. No. 254.)

For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed").  Here, at the time the instant action was filed, the undersigned had previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with

11

two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted.  The Northern District of California had one case pending involving a related patent for which it had construed the disputed claim terms.

Given that this Court is the only court with substantive experience with some of the patents-in-suit, and currently has twenty-five pending cases involving all four asserted patents, and six cases involving two asserted patents—all assigned to the same judge—there were at least some apparent judicial economy benefits at the time of the filing that favor this action remaining in this District.  While it appears the Northern District of California also had some familiarity with a related patent, this Court's substantive familiarity with the patents-in-suit weighs slightly against transfer.

## II.     The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

### (a) The Administrative Difficulties Flowing From Court Congestion

This factor is the most speculative, and cannot alone outweigh other factors.  *Genentech*, 566 F.3d at 1347.  However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis.  *Id.*  Netgear cites varying general civil litigation statistics and contends this factor is neutral. (Doc. No. 22, at 14–15.) Chrimar cites to this Court's prior analysis based on data it presented regarding a case pending in the Northern District of California involving one related patent with a trial date set for August 22, 2016, forty-one months after it was initiated in the Northern District of California, compared to the *Chrimar II* cases (involving all four and two

12

of the patents-in-suit, respectively) that are set for trial in October 2016, less than nineteen months from when those cases were initiated in this District. (Doc. No. 27, at 14.)  As this Court previously stated, while generally the Court finds this factor to be speculative in nature, in this instance, the co-pendency of related patent infringement actions is instructive. Where this Court has set trial on its related patent cases in a time frame that moves the case to trial twice as fast as the related case in the Northern District of California (nineteen months compared to forty-one months), the Court finds this factor weighs slightly against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

Netgear contends that the Northern District of California has a local interest in this case because Netgear is headquartered there and the vast majority of party witnesses and evidence are located in California. (Doc. No. 22, at 15.) Chrimar maintains that this District has a local interest in these actions because Chrimar Holdings Company LLC is a Texas company that has been based in Longview, Texas for several years and maintains one full-time employee.  (Doc. No. 27, at 14–15.)  Ultimately, because Netgear has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012).  This District also has at least some local interest as Chrimar has an office in

13

this District and employs at least one permanent employee in this District. On balance, this factor weighs in favor of transfer because Netgear has specifically identified individuals whose work and reputation are being called into question by allegations of infringement. Such a designation weighs more heavily than Chrimar's identification of one individual largely involved in licensing and marketing activities.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

Upon balancing the venue factors, the Court finds that the Northern District of California is a clearly more convenient forum. Here, the location of sources of proof, the convenience of willing witnesses, and the local interest weigh in favor of transfer. These three important factors, considered together, ultimately weigh heavily in favor of transfer in this case. Considerations of judicial economy and the administrative difficulties arising from court congestion weigh slightly against transfer. All other factors are neutral. The Court acknowledges that the strongest factor against transfer on the facts before it is judicial economy. In this situation, where Netgear has made a strong showing in favor of transfer on factors such as the location of sources of proof and the convenience of witnesses, the benefits of judicial economy do not outweigh Netgear's showing that the Northern District of California is clearly more convenient. Simply put, where Netgear has shown the Northern District of California is a clearly more convenient forum, the considerations of judicial economy involving this Court's prior experience with an overlapping

14

patent and co-pending cases do not override that showing to warrant a denial of transfer.  *See In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation"); *In re Apple*, 581 F. App'x 886, 889 ("judicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion.")  Accordingly, the Court **GRANTS** Netgear's motion to transfer (Doc. No. 22).

So ORDERED and SIGNED this 15th day of January, 2016.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

15